### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

MICHAEL MOMENT                     *

         Plaintiff         *        Civil Action No. 8:22-cv-03199-AAQ

   v.                              *

AHMED RAHIMI, et al.               *

         Defendants        *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### MEMORANDUM OF LAW IN SUPPORT OF
### MOTION TO DISMISS

MARC ELRICH, one of the Defendants, by KARPINSKI, CORNBROOKS & KARP, P.A. and KEVIN KARPINSKI, his attorneys, respectfully submits this Memorandum of Law in Support of his Motion to Dismiss.

### INTRODUCTION

Plaintiff Michael Moment ("Plaintiff") seeks $36,000,000.00 in damages from Defendant Marc Elrich ("Mr. Elrich"), as well as scores of millions of dollars from the other Defendants. As best the Complaint may be deciphered, Plaintiff's claims arise out of various encounters with one or more individual citizens, officials and law enforcement officers from Takoma Park, Maryland, and apparently, from some interaction with the "Abandoned Motor Unit" of Montgomery County, Maryland ("the County").[1] Mr. Elrich is currently the

---

[1]     Plaintiff has named ""Non-Profit Organization Montgomery County Corporation" as a Defendant, apparently in an attempt to sue the County. The City of Takoma Park is a body corporate, portions of which are located inside the County. To the extent Montgomery County had a unit named the "Abandoned Motor Unit," it would appear that the department is presently called the "Vehicle

County Executive of Montgomery County, an office he has held since he was first elected to the office in November of 2018.

Plaintiff's "Statement of Claims" lists a series of events beginning in May of 2019 when he was allegedly detained by a member of the Takoma Park Police Department ("TKPD"). Plaintiff's Statement of Claims then progresses through a number of apparently unsatisfactory business transactions with the individual citizen Defendants. Plaintiff complains of one or more detentions and arrests by members of the TKPD, criminal charges against Plaintiff arising from those events, and circumstances around the various dispositions of the criminal charges. Plaintiff also complains of various ticketing and towing of vehicles Plaintiff claims to own or have owned.

As it relates to Mr. Elrich, Plaintiff complains in exceedingly sparse fashion of an instance where Mr. Elrich declined to assist Plaintiff in retrieving Plaintiff's vehicles after that property had been impounded and purportedly stored at a County facility. Plaintiff may also be alleging through implication alone that Mr. Elrich bears some undefined liability because, allegedly, some of that personal property was then released to individuals other than Plaintiff.

The Complaint fails to describe in any manner whatsoever what possible connection Mr. Elrich has to nearly all of the events identified in the Statement of Claims. Where Mr. Elrich is described as engaging in an act or omission, such descriptions fail to identify any unlawful conduct by Mr. Elrich, no matter how

---

Recovery Section."

generously the allegations are construed. Although the word "conspiracy" is sprinkled in the Complaint, there are no allegations implying or expressly stating that Mr. Elrich was working in concert with any other individual. Not only is there an utter dearth of <u>plausible</u> misconduct, there is also an absence of any express or implied <u>possible</u> misconduct, particularly as the Complaint relates to Plaintiff's interactions with private citizens, employees or officials of Takoma Park, the State's Attorney's offices and/or the State courts in the County. In addition to the complete lack of factual allegations identifying any wrongdoing by Mr. Elrich, all claims against Mr. Elrich should be dismissed with prejudice given that the Complaint is a transparent exercise in the misuse of the judicial process by attempting to prosecute claims utterly lacking in merit.[2]

### SUMMARY OF PLAINTIFF'S CLAIMS AGAINST THIS DEFENDANT

### I.    Pertinent Allegations Drawn From The Complaint.

Solely for the purposes of the instant Motion, and without conceding the veracity of any allegation in the Complaint, Mr. Elrich recounts allegations possibly pertinent to Mr. Elrich's conduct.

Apparently related to an arrest of Plaintiff on April 28, 2022, and towing of Plaintiff's vehicles by a number of individuals other than Mr. Elrich (Complaint, ECF 1-1, p. 11 of 19), Plaintiff recounts the following:

Plaintiff contacted the Montgomery County Executive to expedite the

---

[2]    Given the specious nature of the claims in the instant Complaint combined with a review of the number of lawsuits Plaintiff "Michael Moment" has filed in this Court in the past, it would appear that Plaintiff is a serial recreational litigant. In addition to dozens of federal lawsuits, a search of the Maryland Judiciary website lists "Michael Moment" as a plaintiff in thirty-three (33) cases from 1999 through 2017.

illegal eviction and the illegal taking of private property (the nine vehicles) that were being held at the Montgomery County Abandoned Motor Unit at 305 Metropolitan Grove Rd., Gaithersburg, Maryland 20878. The Montgomery County Executive Office order [sic] all eight [sic] vehicles return [sic] to Plaintiff with no charge.

*Id.*, ECF 1-1, p. 12 of 19. Plaintiff then alleges that on July 13, 2022, his vehicles were again ticketed and towed to the Abandoned Motor Unit. *Id.* Plaintiff then alleges:

Plaintiff again notified the Montgomery County Executive Office of these [sic] illegal towing by the Defendant, City of Takoma Park, Danial [sic] Bushman the Defendant, but this time the Montgomery County Executive refuse [sic] intervene in the attempted intimidation and harassment to the Plaintiff.

*Id.* Plaintiff then alleges that on October 18, 2022, the Abandoned Motor Unit "give [sic] Plaintiff [sic] private property … to some individuals who were not the owner." *Id.*, p. 13 of 19. Plaintiff then alleges that the Abandoned Motor Unit "charge $1,200.00 to the individuals who stole the Plaintiff's property from their facility."[3]

## II.   Causes of Action Pleaded Against Mr. Elrich as Identified under Plaintiff's "amount in Controversy" Section.

Included in Plaintiff's "Amount in Controversy" section, is the following:

9. Marc Elrich: $19,500,000 (Nineteen Million Five Hundred Thousand Dollars)

    a. Defendant, Marc Elrich, failing to supervise it's (sic) employees, conspiring to commit an unlawful and harmful acts

---

[3]   According to the website for the County's Vehicle Recovery Section ("VRS"), the unit "is responsible for removing abandoned, unregistered, and illegally parked junk vehicles from public roads." In addition to its other responsibilities, the VRS holds monthly auctions as part of the process of dealing with abandoned and/or junk vehicles.
*See* https://www3.montgomerycountymd.gov/311/Solutions.aspx?SolutionId=1-AOJQ9; last visited on May 31, 2023.

against Plaintiff (Title 18 U.S.C. sec. 242, violating Plaintiff, privileges and immunities (Article IV, sec 2 of Constitution, Fourteenth Amendment, violating Plaintiffs equal protection rights (Fourteenth Amendment), damage of property (Title 18 U.S.C. sec.247), due process, Constitution and civil Rights violations, retaliation and intimidate (Title 18 U.S.C. sec.245 (b)(2)), conspired with defendants (Title 18 U.S.C. sec. 241), Kate Stewart, Antonio De Vaul, Ahmed Rahimi, Evans Fomunyoh, Michelle Holmes, Daniel Bushman, Kyle Robison.

Complaint, ECF 1-1, pa 9 of 19 (grammatical errors in original). Unpacking that paragraph, it would appear that Plaintiff is alleging a failure of supervision claim, claims under 18 U.S.C. sections 241, 242, 245(b)(2), and 247, a conspiracy claim, violations of Plaintiff's rights to equal protection and due process, and a violation of the privileges and immunities clause of the United States Constitution.

### III.    Plaintiff's Claims for Relief.

Plaintiff's "Relief" section includes the following:

Defendant, Marc Elrich:

Defendant, Marc Elrich, Failure to supervise it's (sic) employees $1,000,000
Failure to train it's (sic) employees $1,000,000
Breach of Law $1,000,000
Intentional Infliction of Emotional Distress $1,000,000
Conspiracy Against Rights $1,000,000
False Imprisonment $19,500,000
False Arrest $1,000,000
Damage of Private Property $50,000
Violations of Civil Rights $5,000,000
Violations of Constitutional Rights $5,000,000

Complaint, ECF 1-1, p. 16 of 19. In addition to the claims derived from the "Amount in Controversy" section identified above, it would appear that Plaintiff is adding common law tort claims for failure to train, false arrest, false

imprisonment, intentional infliction of emotional distress, as well as a claim for "damage to property." Mr. Elrich construes Plaintiff's "breach of law", "violations of civil rights" and "violations of constitutional rights" as summaries of some or all of the more specific claims, but not as stand-alone causes of action.

## ARGUMENT

The sum total of factual allegations against Mr. Elrich include: 1) he is the County Executive; 2) that he declined to assist Plaintiff the second time Plaintiff's vehicles were towed; and 3) the vehicle impoundment unit of the County allegedly released some of Plaintiff's property to other individuals. There are no allegations that Mr. Elrich was aware of or was personally involved in the release of the property. While the assertion that Mr. Elrich once assisted Plaintiff with the release of his property is assumed to be true for the purpose of this Motion, nothing herein should be construed as an admission that the event ever occurred. There are no allegations that Mr. Elrich was aware of or participated in the other numerous events about which Plaintiff complains involving private citizens or officials from the City of Takoma Park. The frivolous and frankly vexatious nature of Plaintiff's claims against Mr. Elrich is illustrated by the fact that Plaintiff is seeking $36,000,000.00 in damages. This is, of course, nonsense.

## I. Standard of Review

The Court recently restated the well-known standards applied to motions to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) as follows:

> Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The

purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' …." (citation omitted)); *see also* [*Nadendla v. WakeMed*, 24 F.4th 299, 304–05 (4th Cir. 2022)]; *Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10, 135 S.Ct. 346, 190 L.Ed.2d 309 (2014) (per curiam). But, mere " 'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if … [the] actual proof of those facts is improbable and … recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955 (internal quotation marks omitted).

*Gaines v. Baltimore Police Dep't*, No. CV ELH-21-1211, 2023 WL 2185779, at *7 (D. Md. Feb. 22, 2023) (emphasis added). Plaintiff's Complaint fails in all respects.

7

## II.     Mr. Elrich is Entitled to Qualified Immunity from Any Federal Claims Impliedly Asserted Through 42 U.S.C. § 1983.

The qualified immunity analysis:

> asks two questions: "whether the facts make out a violation of a constitutional right and whether the right at issue was clearly established at the time of defendant's alleged misconduct." *West v. Murphy*, 771 F.3d 209, 213 (4th Cir. 2014) (cleaned up). If the answer to either is no, immunity attaches. We may address the questions in "the order of decisionmaking that will best facilitate the fair and efficient disposition of each case." *Pearson v. Callahan*, 555 U.S. 223, 242, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

*Putman v. Harris*, 66 F.4th 181, 186 (4th Cir. 2023). Here, Plaintiff complains that Mr. Elrich did not assist him a second time with the release of his vehicles and that a unit within the County wrongfully distributed Plaintiff's property. Neither allegation describes an event of constitutional dimensions. Even if this were not so, and it is, it remains that Plaintiff has no clearly established right to a discretionary act in his favor related to assistance with release of his impounded property. Likewise, even if a County unit wrongfully distributed Plaintiff's property, a point not conceded, Plaintiff has no clearly established right to have the County Executive micro-managing the unit in order to prevent any errors. Therefore, even if Plaintiff has articulated circumstances implicating any rights afforded him under the Constitution, it remains that such rights were not clearly established, and Mr. Elrich enjoys qualified immunity from such claims.

## III.    Mr. Elrich is Afforded Statutory Public Official Immunity From Plaintiff's State Law Tort Claims.

> An official of a municipal corporation, while acting in a discretionary capacity, without malice, and within the scope of the official's employment or authority shall be immune as an official or individual from any civil liability for the performance of the action.

Md. Code Ann., Cts. & Jud. Proc. § 5-507(a)(1). As County Executive, Mr. Elrich qualifies as a public official. *See Biser v. Deibel,* 128 Md. App. 670, 678, 739 A.2d 948, 952 (1999). The malice necessary to defeat the immunity means:

> conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will; or fraud, and a plaintiff asserting malice must point to specific evidence that raises an inference that the defendant's actions were improperly motivated.

*White v. City of Annapolis by & through City Council*, 439 F. Supp. 3d 522, 536 (D. Md. 2020) (quotation omitted). There are no express claims of malice in the Complaint and nothing in the Complaint may lead to a reasonable inference that Mr. Elrich engaged in any conduct out of malice. Therefore, the immunity attaches.

The statute expressly states it encompasses "any civil liability." There is some authority for the proposition that § 5-507 does not apply to claims asserted through the Maryland State Constitution and/or for intentional torts. The defense does not concede those analyses are correct. In any event, Plaintiff has not pleaded any State Constitutional torts. Furthermore, any torts which might be inferred from the Complaint as to Mr. Elrich do not amount to any intentional tort. It remains Mr. Elrich is entitled to statutory public official immunity for a discretionary decision to decline to assist Plaintiff a second time, and from any allegation that Mr. Elrich improperly trained or supervised the County unit that purportedly released Plaintiff's property to other individuals.

## IV.    All Claims Against Mr. Elrich Fail under the *Iqbal/Twombly* Pleading Standard.

The Complaint is devoid of any allegation which might qualify as a material

9

action undertaken by Mr. Elrich amounting to an unlawful action. Plaintiff does allege that the Montgomery County Executive assisted him once when Plaintiff's vehicles were impounded, but that Mr. Elrich declined to do so a second time. ECF 1-1, p. 12 of 19. The Complaint alleges that Plaintiff's personal property was released by a County unit to the wrong individuals. *Id.*, p. 13 of 19. No reasonable inference may be drawn from those allegations that Mr. Elrich somehow engaged in wrongful conduct, let alone any wrongdoing of constitutional dimensions. All claims against Mr. Elrich may, and respectfully, should be dismissed with prejudice.

        **a.**        **False Arrest/False Imprisonment, Impoundment, Eviction.**

As County Executive for the County, Mr. Elrich bears zero responsibility whatsoever for the circumstances that Plaintiff was detained, arrested and/or criminally charged by members of the TKPD, a law enforcement agency serving an entirely separate and distinct municipal unit, the City of Takoma Park. Likewise, there is no link between Mr. Elrich and any act that resulted in the "eviction" of Plaintiff from any private property in Takoma Park nor in the impoundment of any of Plaintiff's property. There are no allegations in the Complaint to the contrary, nor could there be. Thus, any claims for false arrest, false imprisonment or intentional infliction of emotional distress related to Plaintiff's interaction with the TKPD or Code Enforcement officials from the City of Takoma Park should be dismissed with prejudice. To the extent there was any deficiency by any official – a point not conceded – when Plaintiff was detained, arrested, charged, convicted, had his personal property impounded, or was

ordered to leave any property in Takoma Park, that conduct cannot be imputed to Mr. Elrich, and all claims grounded on such actions must fail as to this Defendant.

> **b.    Plaintiff Does Not Have a Private Right of Action Under the Federal Criminal Statutes Upon Which He Attempts to Rely.**

Mr. Elrich adopts and incorporates as if fully set forth herein Co-Defendant Kyle Robinson's argument (ECF 23-1, pp. 4-6) that 18 U.S.C. §§ 241, 242, 245 & 247[4] do not create a private right of action in favor of Plaintiff. The cited statutes are found under Chapter 13 in Title 18 of the United States criminal code and by their plain language are intended to proscribe criminal conduct affecting the civil rights of the victims. "[I]mplied causes of action are disfavored and should be found only where a statute clearly indicates that the plaintiff is one of a class for whose benefit the statute was enacted and there is some indication that Congress intended such a cause of action to lie. *Flowers v. Tandy Corp.*, 773 F.2d 585, 589 (4th Cir. 1985). "The violation of a federal criminal statute does not provide for a private cause of action." *Casey v. Orman*, No. CIV.A. 5:08-CV-01373, 2009 WL 2971770, at *5 (S.D.W. Va. Sept. 10, 2009) (citing *United States v. Oguaju*, 76 F. Appx. 579, 581 (6th Cir.2003) (finding that the District Court properly dismissed claims filed pursuant to 18 U.S.C. §§ 241

---

[4]    Section 241 proscribes any conspiracy against rights. Section 242 proscribes deprivation of rights under the color of law. Section 245 proscribes activity undermining federally protected activities. Section 247 proscribes damage to religious property and/or the obstruction of persons in the free exercise of religious beliefs. Each section provides for the imposition of criminal penalties. There is on mention of religion in the Complaint whatsoever.

and 242 because the party had no private right of action under either of those criminal statutes).

Furthermore, had any of Plaintiff's civil rights been violated, and there is no such reasonable inference to be drawn from the face of the Complaint, it remains that Plaintiff has civil recourse for the protection of such rights under a variety of avenues in both federal and Maryland State law. In other words, even if Plaintiff could bring a cause of action under these Code sections, and he may not, it remains that the claims would be redundant in light of other civil actions he would be permitted to pursue if he had any colorable basis for doing so, including the federal constitutional rights he appears to be expressly asserting here by reference to the Fourteenth Amendment. Any and all claims under these federal criminal statutes found under Title 18, Chapter 13 should be dismissed with prejudice.

### c.   Conspiracy.

The Honorable Deborah L. Boardman recently provided the following analytical framework for a civil conspiracy claim:

> Civil conspiracy is "the 'combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff.'" *Marshall v. James B. Nutter & Co.*, 758 F.3d 537, 541 (4th Cir. 2014) (quoting *Hoffman v. Stamper*, 867 A.2d 276, 290 (Md. 2005)). To state a claim for civil conspiracy, the plaintiff must allege other tortious conduct. *See Arkansas Nursing Home Acquisition, LLC v. CFG Cmty. Bank*, 460 F. Supp. 3d 621, 647 (D. Md. 2020) ("Under Maryland law, there is no separate tort for civil conspiracy; instead, a civil conspiracy theory merely serves to extend liability to the co-conspirators after some other tortious conduct is established."); *see also Marshall*, 758 F.3d at 541 (holding a plaintiff cannot prevail on a claim for civil conspiracy under

> Maryland law "in the absence of other tortious injury to the plaintiff"
> (quoting *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665
> A.2d 1038, 1045 (Md. 1995))). Stated differently, "[n]o action in tort
> lies for conspiracy to do something unless the acts actually done, if
> done by one person, would constitute a tort." *Alleco*, 665 A.2d at
> 1045 (quoting *Domchick v. Greenbelt Consumer Servs., Inc.*, 87 A.2d
> 831, 834 (Md. 1952)).

*Rojas v. Huntington Neighborhood Ass'n*, No. DLB-21-28, 2022 WL 616815, at *4

(D. Md. Mar. 1, 2022).

Here, beyond the bald use of the word "conspiracy," the Complaint fails to

articulate any valid claim of an unlawful act and also fails to articulate a claim

of a legal act committed in an unlawful manner. Furthermore, there are zero

allegations supported by reference to any facts that Mr. Elrich worked in concert

with one or more individuals to take any action against Plaintiff whatsoever. Any

and all claims of "conspiracy" fail on the face of the Complaint and should be

dismissed with prejudice.

### d. The Complaint Fails to Allege a Violation of the Privileges and Immunities Clause.

The United States Court of Appeals for the Fourth Circuit recently outlined

the purpose of the Privileges and Immunities Clause as follows:

> Article IV's Privileges and Immunities Clause entitles "[t]he Citizens
> of each State ... to all Privileges and Immunities of Citizens in the
> several States." U.S. Const. art. IV, § 2, cl. 1. The Clause serves to
> "constitute the citizens of the United States one people, by placing
> the citizens of each State upon the same footing with citizens of other
> States, so far as the advantages resulting from citizenship in those
> States are concerned." *Lunding v. N.Y. Tax Appeals Tribunal*, 522
> U.S. 287, 296, 118 S.Ct. 766, 139 L.Ed.2d 717 (1998) (cleaned up)
> (quoting [*Paul v. State of Virginia*, 75 U.S. 168, 180 (1868)]. Its
> "protections are not absolute," but the Clause has always proscribed
> "discrimination against citizens of other States where there is no
> substantial reason for the discrimination beyond the mere fact that
> they are citizens of other States." *Saenz v. Roe*, 526 U.S. 489, 502,

119 S.Ct. 1518, 143 L.Ed.2d 689 (1999) (quoting *Toomer v. Witsell*, 334 U.S. 385, 396, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948)). And more recently, in [United Bldg. & Const. Trades Council of Camden Cnty. & Vicinity v. Mayor & Council of City of Camden, 465 U.S. 208, 104 S. Ct. 1020, 79 L. Ed. 2d 249 (1984)] the Supreme Court extended the Clause's reach to prohibit municipal- or county-residence requirements that exclude citizens of other States. 465 U.S. at 215–18, 104 S.Ct. 1020.

*Brusznicki v. Prince George's Cnty.*, 42 F.4th 413, 420 (4th Cir. 2022).

Here, there are no express allegations nor reasonable inferences to be drawn whatsoever that Plaintiff has somehow been treated disparately by Mr. Elrich (or any other Defendant) based on his status as an apparent resident of the District of Columbia. The claim is without merit and should be dismissed with prejudice.

### e.   Failure to Train and/or Failure to Supervise.

Other than the uses of the phrases "failure to train" and "failure to supervise," there are no allegations in the Complaint indicating which employees of any employer were improperly trained or supervised, what the deficient training or supervision amounted to, nor any allegations describing a link between any such failure and any injury to Plaintiff. There are no allegations that Mr. Elrich "employs" any individual nor could there be. There are no allegations that Mr. Elrich had any personal involvement in any training or supervision of any of the unnamed and unidentified employees.

In order to state a claim for failure to train:

the plaintiff must allege facts that reveal: "(1) the nature of the training, (2) that the training was a 'deliberate or conscious' choice by the municipality, and (3) that the [employees'] conduct resulted from said training." Jones, 2015 WL 4509871, at *18 (quoting *Lewis v. Simms*, No. AW-11-CV-2172, 2012 WL 254024, at *3 (D. Md. Jan.

14

26, 2012) ).

*McDowell v. Grimes*, No. CV GLR-17-3200, 2018 WL 3756727, at *4 (D. Md.

Aug. 7, 2018).

> In order to state a claim for failure to supervise:

> plaintiff must allege (1) that the supervisor had "actual or constructive knowledge" that a subordinate was engaged in conduct that "posed a pervasive and unreasonable risk of constitutional injury"; (2) that the supervisor's response to that knowledge "was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) an "affirmative causal link" between the supervisor's inaction and the plaintiff's alleged constitutional injury. *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (citing *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

*Brown v. Bratton*, No. CV ELH-19-1450, 2020 WL 886142, at *34 (D. Md. Feb.

21, 2020).

In the instant matter, the Complaint is entirely devoid of any allegations which might be construed as a factual representation of any of the elements of either one of the claims. Plaintiff's assertion of these claims is simply more of the same – nonsensical reference to legalistic terms – entirely without reference to any factual allegation which might support the claims. Therefore, the claims should be dismissed with prejudice.

### f.   Intentional Infliction of Emotional Distress.

In order to state a claim of intentional infliction of emotional distress:

> a plaintiff must show that a defendant's conduct was (1) intentional or reckless, (2) extreme and outrageous, (3) causally connected to plaintiff's emotional distress, and (4) that the resulting distress was severe.

*Respess v. Travelers Cas. & Sur. Co. of Am.*, 770 F. Supp. 2d 751, 757 (D. Md.

2011) (citations omitted). "[T]he tort is rarely viable, and is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct." *Id.* (quotations omitted).

Once again, there simply are no allegations of fact articulated in the Complaint against Mr. Elrich, which would support any element of the cause of action. Therefore, the claim should be dismissed with prejudice.

### g. **Damage to Personal Property.**

There are no allegations that Mr. Elrich damaged any of Plaintiff's "personal property." Whatever wrongdoing Plaintiff is attempting to conjure up by including the phrase "damage to personal property," it remains that there are simply no facts alleged which, even if true, would amount to a description of Mr. Elrich causing any damage to any personal property of Plaintiff, and the claim must fail.

### h. **Equal Protection.**

"To state an equal protection claim, a plaintiff must demonstrate that he has been treated differently from others similarly situated and that the unequal treatment was the result of purposeful discrimination." *Antietam Battlefield KOA v. Hogan*, 501 F. Supp. 3d 339, 346 (D. Md. 2020), *aff'd in part, appeal dismissed in part*, No. 20-2311, 2022 WL 1449180 (4th Cir. May 9, 2022) (citing *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).

Completely absent from the Complaint are any allegations identifying any comparators similarly situated to Plaintiff. Completely absent from the Complaint are any allegations which would support an inference that Plaintiff

was subjected to unequal treatment with respect to the (absent) comparators. Finally, completely absent from the Complaint are any allegations whatsoever that Mr. Elrich was motivated by purposeful discrimination. Plaintiff's equal protection claim should be dismissed with prejudice.

i.    **Due Process.**

Consistent with the deficiencies of all of his other claims against Mr. Elrich, Plaintiff's mere use of the phrase "due process" fails to comply with the notice provisions of Fed. R. Civ. P. 8(a)(2)  requiring "a statement of the claim showing that the pleader is entitled to relief[.]" To the extent Plaintiff's bald due process claim is in reference to his detention, arrest, and conviction or, to the impoundment of his vehicles, for the reasons set forth in Section IV(a) above, the claim does not implicate Mr. Elrich – even if there was a constitutional violation – a point not conceded.

To the extent that Plaintiff complains about the alleged decision by "the Office of the County Executive" not to assist Plaintiff the second time his vehicles were impounded and/or to the extent Plaintiff's due process claim rests on the allegation that Plaintiff's property was released to individuals other than Plaintiff, the claim still fails as to Mr. Elrich.

Plaintiff does not trouble himself to articulate to the Court whether he is claiming a violation of his substantive due process rights or his procedural due process rights. It matters not. Under even a generous reading of the limited factual context describing acts or omissions by Mr. Elrich, both types of due process claims fail.

17

In *Pulte Home Corp. v. Montgomery Cnty., Maryland*, 271 F. Supp. 3d 762, (D. Md. 2017), *aff'd*, 909 F.3d 685 (4th Cir. 2018), this Court described due process as follows:

> The Fourteenth Amendment prohibits any State from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. This contains both a substantive as well as a procedural protection. To state a violation of substantive due process under the Fourteenth Amendment, plaintiffs must allege "(1) that [they] had property or a property interest; (2) that the state deprived [them] of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that <u>no process</u> could cure the deficiency." *Quinn v. Board of County Commissioners for Queen Anne's County, Md.*, 862 F.3d 433, 443 (4th Cir. 2017) (emphasis in original) (quoting *Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 827 (4th Cir. 1995)). In analyzing a zoning provision, the court in *Quinn* stated that, "[t]his is a high bar, and an action is illegitimate only if the alleged purpose behind the state action has no conceivable rational relationship to the exercise of the state's traditional police power through zoning." *Id.* (internal quotations omitted). To establish a violation of procedural due process, plaintiffs must show that "(1) they had property or a property interest (2) of which the defendant deprived them (3) without due process of law." *Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 328 (4th Cir. 2005). Of key importance here, both the substantive and procedural due process violations depend on the plaintiffs possessing a constitutional property interest.

*Pulte Home Corp.*, 271 F. Supp. 3d at 771.

"'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Id.* (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

Plaintiff has no property interest in the discretionary assistance from the Office of the County Executive as to whether or not Plaintiff's impounded vehicles should have been released. "'Any significant discretion conferred upon the local

agency defeats the claim of a property interest.'" *Id.* (quoting *Gardner v. City of Baltimore Mayor and City Council*, 969 F.2d 63, 68 (4th Cir. 1992)).

Even assuming that Plaintiff maintained a valid property interest in his personal property after it had been impounded and before it was purportedly improperly released to other individuals – a point not conceded – it remains that the act does not fall so far beyond the outer limits of legitimate governmental action that <u>no process</u> could cure the deficiency, and thus, the substantive due process claim must fail. As a matter of common sense, municipal entities the size of the County should maintain a mechanism for dealing with impounded or abandoned motor vehicles. In fact, the County has adopted Code and regulatory provisions dealing with impounded and abandoned vehicles – a legitimate exercise of municipal authority.

"To determine whether a procedural due process violation has occurred, courts must consult the entire panoply of predeprivation and postdeprivation process provided by the state." *Ihnken v. Gardner*, 927 F. Supp. 2d 227, 236 (D. Md. 2013). There are no allegations that Mr. Elrich or the County towed Plaintiff's vehicles and therefore no predeprivation violation will lie against Mr. Elrich.

As to postdeprivation remedies, COMCOR, or the Montgomery County Code of Regulations includes comprehensive towing regulations, providing for the handling of impounded vehicles and includes the mechanisms necessary for an owner to recover impounded property. *See* COMCOR 30C.00.01 Motor Vehicle Towing from Private Property, COMCOR 30C.00.02 Executive Towing Rules and Regulations, and COMCOR 30C.02.01 Maximum Rates for Motor Vehicle Towing from

19

*Private Property.* There are no express or implied allegations in the Complaint that Plaintiff availed himself of those mechanisms. Plaintiff may not complain about postdeprivation remedies where he failed to participate in the available remedies.

## V.   To The Extent Mr. Elrich Has Been Impliedly Sued in His Official Capacity, He is Entitled to Dismissal of All Federal Claims Against Him in His Individual Capacity.

"An official capacity claim against a government employee is, in effect, a claim against the governmental unit." *Lowery v. Prince George's Cnty., Md.*, 960 F. Supp. 952, 954 (D. Md. 1997) (citing *Gray v. Laws*, 51 F.3d 426, 430 (4th Cir.1995). Plaintiff fails to inform the Court whether he is suing Mr. Elrich in his official capacity or in his individual capacity or both. To the extent, the claims are intended to be pleaded against Mr. Elrich in his official capacity, such claims are against the County, and Mr. Elrich may be dismissed in his individual capacity.

## VI.   Dismissal with Prejudice is Appropriate Here.

The Court will not abuse its discretion by dismissing any or all claims with prejudice.

> Federal Rule of Civil Procedure 15 provides that a party seeking to amend its pleading after twenty-one days following service may do so "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). However, the Rule requires courts to "freely give leave when justice so requires." *Id.* The Fourth Circuit's policy is "to liberally allow amendment." *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010). Accordingly, leave to amend should be denied only if "prejudice, bad faith, or futility" is present. *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509-10 (4th Cir. 1986) (interpreting Foman v. Davis, 371 U.S. 178 (1962)); *Hart v. Hanover Cnty. Sch. Bd.*, 495 F. App'x 314, 315 (4th Cir. 2012). Ultimately, the decision to grant leave to amend rests in this Court's discretion. [Foman, 371 U.S. at 182; *Laber v. Harvey*, 438 F.3d 404, 428 (4th Cir. 2006) (*en banc*).

20

*Lavin v. Safeco Ins. Co. of Am.*, No. CV SAG-22-1788, 2022 WL 17342051, at *1 (D. Md. Nov. 30, 2022).

Plaintiff has not yet sought leave to amend, however, the defense respectfully submits the Court should foreclose that potentiality by dismissing all claims with prejudice. While the form of the Complaint, including bare bones factual allegations, use of bald legalistic terminology, and bizarrely excessive requests for compensatory damages smacks of bad faith, the Court need not reach that issue. No amendment could cure the futility of asserting the aforementioned claims against this Defendant, and the defense requests the claims be dismissed with prejudice to terminate this exercise.

### CONCLUSION

Wherefore, for all the foregoing reasons, Defendant Marc Elrich respectfully requests this Honorable Court dismiss all claims against him with prejudice, and any other relief the cause of action may demand.

Respectfully submitted,

KARPINSKI, CORNBROOKS & KARP, P.A.

BY: _____/s/ Kevin Karpinski_____
         KEVIN KARPINSKI, #11849
         AIS #9312150114
         120 East Baltimore Street
         Suite 1850
         Baltimore, Maryland 21202-1617
         410-727-5000
         Kevin@bkcklaw.com
         *Counsel for Marc Elrich*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 2nd day of June 2023, the foregoing was electronically filed with notice to:

Raymond R. Mulera, Esquire
Local Government Insurance Trust
7225 Parkway Drive
Hanover, Maryland 21076
***Counsel for Defendants City of Takoma Park,***
***Kate Stewart, Antonio Devaul,***
***Michelle Holmes, Kyle Robison & Daniel Bushman***

and sent via first class mail, postage prepaid to:

Mr. Michael Moment
18010 Trenton Place, #301
Washington, D.C. 20020
***Pro Se Plaintiff***

Ahmed Rahimi
4903 Annapolis Road
Bladensburg, Maryland 20710
***Defendant***

Evans Fomunyoh
6600 New Hampshire Avenue
Takoma Park, Maryland 20912
***Defendant***

"Non-Profit Organization Montgomery County Corporation"
101 Monroe Street
Rockville, Maryland 20850-2503
***Defendant***

　　　　　　　/s/ Kevin Karpinski　　
　　　　　*Counsel for Defendant Marc Elrich*